THOS. W. TORMEY, JR., Secretary, Medical Examining Board
You have requested my opinion on three questions concerning the practice of podiatry under current regulations licensing such *Page 157 
practice. You ask whether a podiatry registrant is permitted to administer injections other than local anesthesia; whether he can perform and interpret laboratory work such as blood counts; and whether he can write prescriptions. Some background information would appear to be helpful.
Section 448.02, Wis. Stats., prohibits the practice of medicine, surgery, or osteopathy, or any other system of treating the sick without a license or certificate from the Medical Examining Board. There is no statutory definition of "practice of medicine and surgery" but one of my predecessors has interpreted that such practice should be construed "according to common and approved usage." 29 OAG 149 (1940). In 70 C.J.S., Physicians andSurgeons, § 15 (b), it is stated at p. 867:
"A person holding a license or certificate to practice medicine and surgery, * * * generally, has unlimited authority to prescribe for and treat the sick * * *, practice the profession in all its branches, and use any method or system of treatment or healing he may choose, * * *."
Therefore, sec. 448.02, Stats., authorizes a person licensed to practice medicine and surgery to provide treatment of any human ailment or infirmity by any method. On the other hand, it has been held a podiatrist is not a licensed physician and surgeon in Wisconsin. State Medical Society v. Manson (1964), 24 Wis.2d 402,129 N.W.2d 231. Implicit in the opinion is the view that a "physician" is an individual holding an unlimited license to practice medicine and surgery in all its various aspects, while a "podiatrist" refers to a person whose practice of medicine is limited in scope to treatment of the feet. In support of this view the court quoted with approval from Medical Care v.Chiropody Association (1956), 141 W. Va. 741, 93 S.E.2d 38, in which precisely the same issue was considered. In considering a statute similar in essence to sec. 448.10, Stats., the West Virginia court gave the following construction of the practice of chiropody under that statute:
"* * * it is manifest that a duly licensed chiropodist may not practice medicine and surgery except within the limits expressly imposed by the statute. * * *" Medical Care v. ChiropodyAssociation, supra, p. 42. *Page 158 
A careful examination of sec. 448.10, Stats., is necessary to delineate the scope of the practice of podiatry.
Section 448.10 (1), Stats., provides:
"The practice of podiatry is the diagnosis or mechanical, medical or surgical treatment, or treatment by the use of drugs, of the feet, but does not include amputations other than digits of the foot or the use of a general anesthetic unless administered by or under the direction of a person licensed to practice medicine and surgery. Diagnosis or treatment shall include no portion of the body above the feet except that the diagnosis and treatment shall include the tendons and muscles of the lower leg insofar as they shall be involved in the conditions of the feet."
This section expressly forecloses a podiatrist from performing amputations, other than toes, or administering a general anesthetic. It also limits the area of treatment to the feet except that diagnosis and treatment shall include "the tendons and muscles of the lower leg insofar as they shall be involved in the conditions of the feet." On the other hand, the section also expressly provides that the practice of podiatry is the "diagnosis or mechanical, medical or surgical treatment, or treatment by the use of drugs, of the feet."
"Diagnosis" is "the art or act of identifying a disease from its signs and symptoms; investigation or analysis of the cause or nature of a condition * * *." Webster's New CollegiateDictionary, 7th Ed., 1967. "Treatment" is "The means employed in effecting the cure of disease; the management of disease or of diseased patients." Gould's Medical Dictionary, 5th Ed.
The term "treat the sick" is defined in sec. 445.01 (1) (a), Stats., in pertinent part:
"`Treat the sick' means to examine into the fact, condition or cause of human health or disease, or to treat, operate, prescribe or advise for the same, * * *."
Section 445.02, Stats., expressly provides that a person shall not "treat the sick" as defined in sec. 445.01 (1) (a), Stats., unless he has a certificate of registration in the basic sciences. Chapter 445 does not expressly exclude podiatry registrants from its requirements nor does ch. 448 explicitly require a podiatrist to obtain a certificate of *Page 159 
registration in the basic sciences. However, sec. 448.12, Stats., provides for special examination of podiatry applicants in most of the same "basic sciences" listed in sec. 445.01 (1) (c). See 31 OAG 389 (1942). Since a podiatrist does "treat the sick" as to ailments of the feet, it must be assumed that the examination provided for in sec. 448.12, Stats., is considered to be an adequate substitute for the basic sciences examination.
The first specific question you ask regarding the practice of podiatry is whether podiatrists are permitted to administer injections other than local anesthesia. Your question requires a construction of the word "treatment" as used in sec. 448.10, Stats. Podiatrists may treat by the use of drugs, medicine or surgery. It would appear to be clear that if the means employed by the podiatrist to cure or manage a disease within the proper bounds of his practice includes the injection of drugs or medicine, he may administer injections without violating the limits of his practice.
This is not to imply that a podiatrist is licensed to administer all injections; on the contrary, it is conceivable that some injections are outside the scope of the practice of podiatry.
The second question concerns whether a podiatrist can perform and interpret laboratory work such as blood counts.
In 39 OAG 10 (1950) there was presented a similar question. The question asked was whether the performance of tests inter alia
"platelet count, bleeding and coagulation times, clot retraction, * * * blood sugar, blood P.N., * * * blood typing (for Landsteimer groups), RH typing, anti-RH titre, * * *" constitute the practice of medicine in violation of the Medical Practice Act. In holding that the performance of these tests by a medical technician did not constitute the practice of medicine, the opinion precluded any diagnosis by a medical technician.
In the present instance, diagnosis or interpretation is authorized by sec. 448.10, Stats.; and it is my opinion that a podiatrist can perform and interpret laboratory work such as blood counts necessary to the treatment of the human foot.
Finally, we must consider whether a podiatrist can write prescriptions. *Page 160 
A prescription is defined as "* * * a statement, usually written, of the medicine or remedy to be used by patients, and the manner of using them * * * a prescribed remedy." 70 C.J.S.,Physicians and Surgeons, § 1, at page 816. And whether a podiatrist is permitted to write prescriptions depends on whether he is licensed to "prescribe." This term has been held to embrace the general object of attempting to cure, remedy or alleviate; a broader meaning than merely prescribing medicine. In re Will ofBruendl (1899), 102 Wis. 45, 78 N.W. 169; City of Racine v.Woiteshek (1947), 251 Wis. 404, 29 N.W.2d 752. As stated above, the podiatrist is authorized to "prescribe," limited of course to treatment of the feet. Clearly then, since a licensed podiatrist is authorized to "prescribe" treatment of the feet, it follows that he may write a prescription for medicine in the normal scope of such practice.
RWW:LLD