Riley, Judge, dissenting.. I respectfully dissent from the majority’s opinion affirming the trial court’s judgment and holding that the insurance coverage policy data, as held by the Rating Bureau, are confidential and, therefore, not available, for public dissemination under APRA. I specifically part ways with the majority’s insistence that LexisNexis’ statutory interpretation “does not say what LexisNexis claims it says,” See Op. p, 898. • Focusing on the “shall file with” language of I.C. § 22-3-6-2, LexisNexis contends that the Board is statutorily mandated to receive and collect an employer’s proof of-insurance coverage. As this information is assembled by a public agency, LexisNexis maintains that the information is a public record which can be requested under APRA. Accordingly, LexisNexis alleges that the Board cannot ignore its statutory duty by outsourcing the collection of employer’s insurance information to a third party. Even if outsourced to a private agency, LexisNexis advocates that the record itself does not lose its characterization of public record for APRA purposes and should remain publicly available. Unlike the majority, I find that I.O. § 22-3-6-2 unequivocally imposes on the Board a statutory duty to receive and collect the insurance information employers “shall file with” the Board. Although the Board now, in blatant disregard of its duty, asserts that it no longer “want[s] or need[s] a copy of the ■[] data[,]” as it claims the limited access through the public web portal to be sufficient, the designated evidence of the T.R. 30(b)(6) witness confirms that the Board enjoys greater access to the proof of coverage data than the data. accessible on the web portal. (Board Br. .p. 19). The witness noted that the link on the Board’s website to access the web portal transferred users to an NCCI page. He admitted that, through his position on the Board, he had access to: effective dates of the. policy, the employer’s name and address, or at least other business locations, because a lot of times there are policies that may cover more than one business, might give us information, on the d/b/a, information regarding cancellation, renewal and reinstatement. I think it might have something about premium information. * * * * There’s probably a lot more, information that I don’t completely understand, that I have access to, and generally doesn’t have any, you know, utility for what I do, (Appellant’s App. Vol. IV, p. 134). Also, the Board, in its appellate brief—and again during the oral argument—begrudgingly conceded that it “can view more data fields than the public through the online portal.” (Board’s Br. p. 14). The designated evidence shows that the Board continues to enjoy remote access to every data element sought by LexisNexis and ''collected by NCCI by order of the Rating Bureau. As such, all this.material “received” by the public agency can potentially be characterized as a public record under APRA, See I.G. § 5-14-3-2(r). Instead of allowing public access to this data as required by APRA, the Board and the Rating Bureau, as now condoned by the majority, rely on I.C. § 27-7-2-40 and the provisions of the data sharing agreement entered into on June 10, 2014, to effectively shield this information behind a technological and contractual firewall. While I agree that I.C. § 27-7-2-40 confers confidentiality on the “data collected by the [Rating Bureau] from its members” and whose classified character must be maintained when the data is disseminated to the Board, this mandate, by its express language, does not encompass the data directly filed with the Board by employers, as contemplated by I.C. § 22-3-5-2. Similarly, although the data sharing agreement between the Board and the Rating'Bureau clarifies that the proof of coverage data is owned by the Rating Bureau, a non-governmental agency, and therefore not subject to the provisions of the APRA, the data sought by LexisNexis relates only to information to verify the insurance coverage and policy rates, as filed directly with the Board. Specifically, LexisNexis only seeks a limited set of policy information about an employer’s insurance coverage and public contact information. Accordingly, LexisNexis is not requesting the elaborate information collected by the Rating Bureau, which also includes personal'identifiable information and pricing structure, but is focused only on the proof of coverage data the Board is statutorily mandated to collect and which is not deemed confidential pursuant to I.C. § 22-3-5-2 or is included in I.C. § 27-7-2-40. Despite the Board’s insistence that it is merely exercising its own discretionary power by limiting access to the, data through the public web portal, in reality this discretion itself is a fallacy as.-the accessibility to the. data is being determined by the Rating Bureau under the guise of the contractual provisions of the data sharing agreement. Essentially, a non-governmental third party is now dictating the public’s access,to public records through a contract entered into with a governmental entity. “Indiana, like - other jurisdictions, recognizes the need for unfettered action by administrative agencies operating within the sphere of their authority.” Ind. Alcoholic Beverage-Commission v. McShane, 170 Ind.App. 586, 354 N.E.2d 259, 268 (1976). Accordingly, it is generally acknowledged that a court may not substitute its judgment for that of the agency in matters within the realm of the agency’s delegated authority, if the agency’s exercise of its discretionary powers is valid and justified. See id. Therefore, an agency may not exercise discretion in a manner that undermines the express will of the legislature. Ashlin Transp. Servs. v. Indiana Unemployment Ins. Bd., 637 N.E.2d 162, 165-66 (Ind. Ct. App. 1994) (holding agency’s interpretation of statute was unreasonable given the plain meaning and not entitled to deference). Pursuant to its statutory mandate, the Board must collect an employer’s proof of covei’age information. See I.C. § 22-3-5-2, Checking compliance of one employer at a time, one date at a time, provides only a piecemeal view of the overall level of long-term compliance by Indiana’s employers that an insurance is designed to afford, and thus reveals nothing about the effectiveness of the Board’s compliance efforts and in fact essentially results in the elimination of a mandatory filing. The APRA’s purpose is to enhance a government’s accountability and legitimacy by giving the public quasi unfettered access to its public records. Within this structure of APRA’s answerability, the data sharing agreement became a vehicle to effectuate an improper evasion of the applicability of APRA. Although a public agency may enter into a contract for the "Storage of public records, this contract cannot “unreasonably impair” the right of the public to inspect and copy the agency’s public records. See I.C. § 5-14-3-3(g); Knightstown Banner, LLC. v. Toim of Knightstown, 838 N.E.2d 1127, 1133 (Ind. Ct. App. 2005), reh’g denied, trans. denied. Here, the data sharing agreement by which the public is accorded very limited access to public records through a web portal accomplishes exactly this unreasonable impairment which is prohibited under APRA. By concluding that because the Board does not presently create, receive, retain, or maintain the data requested by LexisNexis the Board is not subject to APRA, the trial court—and now the majority—truncated and ignored the plain statutory language of I.C. § 22-3-5-2, which mandates the Board to receive' an employer’s proof of coverage filings. Unlike the Rating Bureau which “may” collect proof of coverage data, the legislature has placed an affirmative legal obligation on the Board to collect the proof of coverage. See I.C. § 27-7-2-40. Although the exigencies of today’s technological advances have replaced the traditional paper filings with the more modern electronic storage options provided by third parties, the legal construct of the Board’s statutory duty or the requirements of APRA have not changed. I find that the piecemeal access to the information via the public web portal is not a viable enforcement of the statute and is insufficient to check an employer’s compliance with worker’s compensation insurance. In sum, the majority’s conclusion today amounts to an open invitation to erode the transparency of governmental affairs which is one of the fundamental bedrocks of the American constitutional form of representative government. I would reverse the trial court’s judgment and enter summary judgment in favor of LexisNexis on its Complaint for violation of APRA.